IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| VINCENT L. HOLLISTER, | ) | CIVIL NO. 12-00176 LEK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MRS. GOOCH'S NATURAL FOOD | ) | |
| MARKETS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Mrs. Gooch's Natural Food Market, Inc.'s ("Defendant") Motion for Summary Judgment ("Motion"), filed September 7, 2012.  Plaintiff Vincent Hollister ("Plaintiff") filed his memorandum in opposition on December 13, 2012, and Defendant filed its reply on December 19, 2012.   This matter came on for hearing on January 3, 2013.  Appearing on behalf of Defendant were Jeffrey Harris, Esq., and Kristi O'Heron, Esq., and appearing on behalf of Plaintiff were Charles Brower, Esq., and Michael Healy, Esq.  After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Defendant's Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

Plaintiff filed a Complaint in the First Circuit Court of the State of Hawaiʻi on November 15, 2011, which Defendant

removed to this Court on April 3, 2012.  The Complaint alleges
violations of state discrimination laws based on age and gender,
and intentional infliction of emotional distress ("IIED").
Plaintiff claims that he worked for Defendant in its Whole Foods
Market stores from January 13, 1999 until he was "terminated from
his position of Store Operations Supervisor [("SOS")] on
August 19, 2010." [Complaint at ¶ 9.]  According to Plaintiff,
in June 2010, Defendant eliminated the SOS position and replaced
it with the Inventory Control Specialist position ("ICS").  [Id.]

Plaintiff claims that the "company-wide practice" was
to place the SOS in the newly created ICS positions, but that
Defendant's Kahala store management decided to issue a "special"
assignment to a younger female assistant and Plaintiff for the
ICS position, which created a competition between them.  [Id. at
¶ 9.]  According to Plaintiff, there were instances of
insubordination by the younger female employee for which no
corrective action was taken by management, and that she was not
held accountable for taking personal calls while at work.  On
August 10, 2010, Plaintiff's younger female co-worker was
selected for the ICS position, and Plaintiff was terminated on
August 19, 2010 because his SOS position had been eliminated.
Plaintiff claims that he was capable of performing his job
function and should not have been terminated.  [Id.]

The Complaint alleges the following claims: (1) violations of Haw. Rev. Stat. § 378-2 due to sex (male) and age (59) (Count I); (2) a hostile work environment claim based upon discrimination (Count II); (3) an IIED claim; and (4) a defamation claim (Count IV).  Plaintiff also seeks an award of punitive damages.  Counts II (hostile work environment) and IV (defamation) were dismissed by stipulation on July 10, 2012. [Dkt. no. 34.]

## I.   Defendant's Motion

Defendant moves for summary judgment on all the claims in Plaintiff's Complaint on the grounds that: (1) it did not discriminate against Plaintiff based on sex or age; (2) Plaintiff has no emotional distress claim because Defendant did not engage in "outrageous" conduct; and (3) punitive damages are not warranted because Defendant did not engage in "willful or wanton misconduct."  [Mem. in Supp. of Motion at 1-2.]

### A.   Discrimination

Defendant argues that it had a legitimate business reason for hiring Sonia Limberis (a younger female employee), rather than Plaintiff for the ICS position based on their performance before an interview panel.  Defendant required all applicants for the ICS position to follow the same interview process, including the completion of an assignment, "taking the initiative to discuss the position with team leaders in advance

of the interview, using paid time to prepare for the interview, and meeting with the same group of panelists." [Id. at 7.] Defendant asserts that Ms. Limberis submitted a thorough assignment, gave a superior performance at her interview, and had experience and skills useful in the new position.  According to Defendant, Plaintiff "gave a lackluster performance during his interview, and that panelists considered this to be a key factor in their decisionmaking."  [Id.]

The interview panel was comprised of six Kahala store employees: Assistant Store Team Leader Robin Burton (age 33), Whole Body Team Leader Sandra Kuo (age 38), Kahala store Receiver Brian Tomaszewski (age 49), Prepared Foods Buyer Christine Georgedes (age 33), ICS/Receiving Associate Laurie Kennedy (age 56), and Store Team Leader Lindsay Benson (age 29).  [Defendant's Concise Statement of Facts in Support ("CSOF"), Decl. of Lindsay Benson ("Benson Decl."), at ¶¶ 4-5.]  The panel conducted interviews on August 11, 2010, and conducted a preliminary vote, a discussion, and a second vote.  After the discussion and second vote, the panel unanimously selected Ms. Limberis for the ICS position.  The panel noted that Plaintiff "gave vague or incomplete answers to questions posed and might have difficulty in training and working with others."  [Id. at ¶ 6.]  Defendant argues that Plaintiff cannot show that he was clearly superior to Ms. Limberis.  [Mem. in Supp. at 8-9.]

Next, Defendants argue that Plaintiff cannot provide evidence demonstrating pretext, that Defendant's reason for not hiring him for the ICS position was more likely motivated by discrimination or is unworthy of credence.  Defendant notes that two of the interview panelists, Ms. Kennedy and Ms. Georgedes, were friends of Ms. Limberis, but argues that favoring a friend is not evidence of discriminatory animus based on age or sex. Defendant states that each panelist had only one vote in a panel of six employees, neither "friend" made comments or otherwise demonstrated animus based on Plaintiff's age or sex, and Ms. Kennedy belongs in the same protected age category as Plaintiff.  [Id. at 11-12.]

Defendant argues that, to the extent Plaintiff relies on the allegation that former Store Team Leader Larry Hoover referred to Plaintiff once as "old man," before Mr. Hoover left the company, such a comment is a "stray remark".  It notes that Mr. Hoover was 60 years old in 2010 and belongs to the same protected class as Plaintiff.  He left the company on May 5, 2010, three months before the August interviews for the ICS position.  It argues that there is no causal connection between the alleged comment and the adverse employment action because Mr. Hoover had no role as a decisionmaker, and the alleged comment was not related to any official act by Defendant.  [Id. at 16-17.]

5

It also argues that the amount of time discussing Plaintiff's application materials is not evidence of discriminatory animus.  Defendant argues that it places significant emphasis on the interview process as set forth in a policy manual.  Defendant contends that, while Plaintiff may contend that the panel's focus on his inability to get along with coworkers was irrelevant, the ICS position job description provided that the individual selected would be required to train and work with all levels of store management and lead and train receivers.  [Id. at 18-19.]  To the extend Plaintiff alleges that Ms. Kennedy coached Ms. Limberis before the interview, Defendant argues that there is no evidence of discriminatory animus; rather, Plaintiff was given the same opportunity to use work time to speak with others about the position and nobody refused to speak with him about the position.  [Id. at 20-21.]

**B.    IIED**

Defendant argues that Plaintiff's IIED claim fails because there are no allegations of outrageous conduct, and, even taking the allegations in the Complaint as true, his departure from the company was not outrageous.  Further, it argues that there is no evidence that Defendant's alleged conduct caused Plaintiff to seek medical treatment, and that any stress he suffered "was self-induced after he declined the Company's offer of paid 'bridge leave' while he sought out alternative positions

in any store across the Company." [Id. at 24.]

## II.   **Plaintiff's Memorandum in Opposition**

Plaintiff argues in his opposition that there is direct evidence of discrimination in this case because Mr. Hoover referred to Plaintiff as "old man" several times in front of Ms. Limberis.  He argues that although Mr. Hoover was no longer with Defendant when Plaintiff was not selected for the ICS position, "he was employed in a supervisory capacity at the time he made the statement." [Mem. in Opp. at 7.]  Plaintiff argues that, because there is direct evidence of discrimination, the Court need not rely on the McDonnell Douglas Corp. v. Green, 441 U.S. 792 (1973), burden shifting framework.  [Id.]  In the event the Court finds no direct evidence of discrimination, Plaintiff argues that he has established a prima facie case of age and sex discrimination.  [Id. at 5.]

Plaintiff contends that he had much more experience that Ms. Limberis, who was his assistant.  He argues that, but for the elimination of his existing position, he would not have had to apply and compete for any position within the company. [Id. at 8-9.]  He asserts that the interview process was subjective, and that the lone male on the panel initially voted in favor of giving him the job.  [Id. at 9 (citing Exh. 14 (9/21/10)).]

7

With respect to Ms. Kennedy's and Ms. Georgedes' friendship with Ms. Limberis, Plaintiff argues that the process by which friends of Ms. Limberis were selected to the panel demonstrates discriminatory animus. He argues that the "discriminatory bias or animus by Defendant against Plaintiff based on his age and sex, is evident in the selection of nearly all women on the panel, nearly half of whom were friends with Limberis." [Id. at 10.]

Plaintiff also argues that "Defendant wrongly failed to select Plaintiff for the ICS position based on discriminatory conduct. As such it is guilty of outrageous conduct." [Id. at 11.]

Plaintiff maintains that there are genuine issues of material fact which preclude summary judgment. [Id.]

III. **Defendant's Reply**

In its reply, Defendant maintains that Plaintiff cannot establish a prima facie case of discrimination and that there is no direct evidence of discrimination. It argues that Mr. Hoover was a member of the same protected category as Plaintiff and left the company before the ICS position was created. His alleged comment was unrelated to the decisional process, according to Defendant. [Reply at 3.]

Defendant asserts that Plaintiff set forth no admissible evidence showing that he was a clearly superior

8

candidate for the ICS position.  It argues that Plaintiff's own declaration stating that he had been in a management position for over ten years, and that he was more qualified for the ICS position than Ms. Limberis is not sufficient on summary judgment. Defendant notes that Plaintiff has not identified any particular skills or qualifications that make him a clearly superior candidate, and that Plaintiff does not have personal knowledge of Ms. Limberis' interview performance.  [Id. at 3-4.]

Next, Defendant argues that there is no evidence that it exceeded its discretion in choosing between equally qualified candidates.  It maintains that interview performance is a legitimate, non-discriminatory basis for distinguishing between candidates absent evidence showing that an employer's reliance on the interview was a discriminatory decision.  Defendant argues that its reliance on the interview process was not discriminatory because it advertised the new ICS position, all applicants were required to complete an assignment prior to interviews, all applicants were able to consult with coworkers, and the panelists carefully considered the application materials.  [Id. at 4-6.] Defendant argues that Plaintiff fails to show that the presence of alleged "friends" of Ms. Limberis on the panel was discriminatory or that any panel member had discriminatory animus or participated in past discrimination.  [Id. at 7.]

## STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## DISCUSSION

Defendants seek summary judgment on all of Plaintiff's claims.  The Court first addresses Plaintiff's sex and age discrimination and retaliation claims, and then discusses his remaining state law claims.

## I.    Count I - Sex and Age Discrimination

### A.    Legal Standard

In construing discrimination claims brought under Haw. Rev. Stat. § 378-2, Hawai'i courts look "to the interpretations of analogous federal laws by the federal courts for guidance".  Shoppe v. Gucci Am., 94 Hawai`i 368, 377, 14 P.3d 1049, 1058 (2000) (citing Furukawa v. Honolulu Zoological Soc'y, 85 Hawai'i 7, 13, 936 P.2d 643, 649 (1997).  The Court follows the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as to Plaintiff's Haw. Rev. Stat. § 378-2 discrimination claims.

> McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973), provides a "useful tool at the summary judgment stage" in addressing Title VII claims.  See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004).

> Under this framework, Plaintiff has the initial burden to establish a prima facie case of discrimination. <u>E.E.O.C. v. Boeing Co.</u>, 577 F.3d 1044, 1049 (9th Cir. 2009) (citation and quotation omitted). "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." <u>Cordova v. State Farm Ins. Cos.</u>, 124 F.3d 1145, 1148 (9th Cir. 1997) (citation omitted).

<u>Hughes v. Mayoral</u>, 721 F. Supp. 2d 947, 957–58 (D. Hawai'i 2010).

A prima facie case under <u>McDonnell Douglas</u> requires a plaintiff to offer proof that: (1) he belongs to a protected class; (2) he performed his job adequately or satisfactorily; (3) he suffered an adverse employment action; and (4) other similarly situated employees who do not belong to the same protected class were treated differently. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1028 (9th Cir. 2006); <u>Noyes v. Kelly Servs.</u>, 488 F.3d 1163, 1168 (9th Cir. 2007).

> After a plaintiff establishes a prima facie showing of discrimination, the burden under the <u>McDonnell Douglas</u> framework shifts to a defendant to put forward a legitimate, non-discriminatory reason for its actions. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802, 93 S. Ct. 1817. A defendant's burden to articulate some legitimate, nondiscriminatory reason for the challenged action is merely a burden of production, not persuasion. <u>Chuang v. Univ. of Cal. Davis Bd. of Trs.</u>, 225 F.3d 1115, 1123–24 (9th Cir. 2000). If a defendant puts forth a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the given reason is merely pretext for a discriminatory motive. <u>Boeing Co.</u>, 577 F.3d at 1049 (citation and

11

quotation omitted).

Hughes, 721 F. Supp. 2d at 957-58.

"[A] plaintiff's burden is much less at the prima facie stage than at the pretext stage." Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1158 (9th Cir. 2010).  That is, circumstantial evidence of pretext must be specific and substantial, see Becerril v. Pima Cnty. Assessor's Office, 587 F.3d 1162, 1163 (9th Cir. 2009), and a plaintiff must do more than merely deny the credibility of the defendant's proffered reason.  See Schuler v. Chronicle Broad. Co., 793 F.2d 1010, 1011 (9th Cir. 1986).  "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003); see also Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1094-95 (9th Cir. 2005).  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." Coghlan, 349 F.3d at 1095.  Circumstantial evidence requires an additional inferential step to demonstrate discrimination.  Id.

> Despite this "useful tool" of the McDonnell
> Douglas framework, there is nothing that "compels
> the parties to invoke the McDonnell Douglas
> presumption." McGinest, 360 F.3d at 1122.  "When
> responding to a summary judgment motion . . . [the
> plaintiff] may proceed by using the McDonnell
> Douglas framework, or alternatively, may simply
> produce direct or circumstantial evidence

12

demonstrating that a discriminatory reason more
likely than not motivated [the employer]."
Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir.
2007) (quoting McGinest, 360 F.3d at 1122).  If
the plaintiff submits direct or circumstantial
evidence, "a triable issue as to the actual
motivation of the employer is created even if the
evidence is not substantial."  Id. (quoting Godwin
v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th
Cir. 1998)).

Hughes, 721 F. Supp. 2d at 957-58.

> **B.**   **Prima Facie Case**

Viewing the facts in the light most favorable to

Plaintiff, he has made a prima facie case of age and sex

discrimination.  Plaintiff has demonstrated that: (1) he belongs

to a protected class (male and 59 years old during relevant time

period); (2) he performed his job adequately; (3) he suffered an

adverse employment action; and (4) a similarly situated, younger,

female employee was treated differently.

Plaintiff also alleges that Mr. Hoover referred to him

in front of Ms. Limberis as "old man" and that this is direct

evidence of discrimination.  Defendant argues that such a comment

is a "stray remark."  It notes that Mr. Hoover was 60 years old

in 2010 and belongs to the same protected class as Plaintiff, and

left the company on May 5, 2010, three months before the August

interviews for the ICS position and played no part in the ICS

hiring decision.  The Court agrees with Defendant that Mr.

Hoover's "old man" comments do not rise to the level of

actionable discrimination under the present circumstances.  Even

viewed in the light most favorable to Plaintiff, the evidence does not demonstrate that Mr. Hoover was a decisionmaker who made deliberate statements showing discriminatory animus.

Stray remarks uttered in an ambivalent manner and not tied directly to the Plaintiff's non-selection for the ICS position are insufficient to show discrimination.  See Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221, (9th Cir. 1998); Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438-39 (9th Cir. 1990) (holding that stray remark by decisionmaker referring to youth of employee promoted instead of age discrimination plaintiff was insufficient to prove the employer relied on illegitimate age-related criteria); see also Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993) (finding that the corporate officer's remark that "we don't necessarily like grey hair" was "more than [a] 'stray remark'" but at best weak circumstantial evidence).

The Court notes that an age-based remark not made directly in the context of an employment decision or uttered by a non-decisionmaker may be relevant, circumstantial evidence of discrimination.  See Reid v. Google, Inc., 235 P.3d 988, 1006 (Cal. 2010); Shager v. Upjohn Co., 913 F.2d 398, 402 (7th Cir. 1990) (stating that a stray remark "may be relevant evidence, with greater or less probative value depending on the precise character of remark").  In assessing the relevance of age or sex-based remarks, however, courts in this circuit have noted the

14

importance of a nexus between the remarks and the alleged acts of discrimination.  See Bowden v. Potter, 308 F. Supp. 2d 1108, 1122–23 (N.D. Cal. 2004) (finding a nexus between at least one discriminatory remark and plaintiff's termination); Marques v. Bank of Am., 59 F. Supp. 2d 1005, 1019 (N.D. Cal. 1999) (noting that one factor considered by the Ninth Circuit in determining whether a remark is more than a stray remark is "whether the comment is related in time and subject matter to the decisional process").  Here, the Court does not find a relationship between the remarks and the employment practices at issue in this litigation that is sufficient to establish discriminatory animus on the part of Defendant.

C.   **Pretext**

Defendant argues that it had legitimate business reasons for declining to hire Plaintiff for the ICS position, and Plaintiff cannot provide any evidence demonstrating that these reasons were pretextual.

> In examining the level of proof of pretext required, the Ninth Circuit distinguishes between direct and circumstantial evidence.  In both Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir. 2007), and Godwin [v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998)], the Ninth Circuit states: "When the plaintiff offers *direct evidence* of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." (Emphasis added.)  Clemmons ignores the express limitation to direct evidence and says, "If the plaintiff submits *direct or circumstantial* evidence, 'a triable issue as to the actual

15

motivation of the employer is created even if the
evidence is not substantial.' Id. (quoting Godwin
at 1221)." Opposition at 26-27, ECF No. 87
(emphasis added). Godwin made it clear that more
is required when the evidence is purely
circumstantial:

> In those cases where direct evidence is
> unavailable, however, the plaintiff may come
> forward with circumstantial evidence that
> tends to show that the employer's proffered
> motives were not the actual motives because
> they are inconsistent or otherwise not
> believable. *Such evidence of "pretense" must
> be "specific" and "substantial" in order to
> create a triable issue* with respect to
> whether the employer intended to discriminate
> on the basis of sex.

Godwin, 150 F.3d at 1222 (citations omitted)
(emphasis added). This distinction was the focus
in Godwin. The Ninth Circuit was attempting to
reconcile the "apparently differing standards" for
a plaintiff's burden of proof based on the type of
evidence presented by the plaintiff. See id. at
1221.

Clemmons v. Haw. Med. Servs. Ass'n, Civil. No. 10-00513 SOM/BMK,

2011 WL 6841008, at *11 (D. Hawai'i Dec. 29, 2011).

### 1.   **Interview Performance**

The evidence shows that the interview panel decided

that Ms. Limberis outperformed Plaintiff at the interview, and

that it placed greater weight on the interview in making its

decision. Plaintiff argues that the interview process was highly

subjective, but does not assert that he performed better than

Ms. Limberis during the interview or application process.

Defendant asserts that interview performance is a

legitimate, non-discriminatory basis for distinguishing between

candidates.   In <u>Gibo v. City and County of Honolulu</u>, Civil No. 07-00627 LEK, 2009 WL 2017874, at *9-10 (D. Hawai'i July 10, 2009), this Court concluded that the age-discrimination plaintiff failed to show pretext where an interview panel scored applicants based only on their responses during an interview, but did not consider annual evaluations, and the plaintiff was instructed to hurry during his interview and purportedly penalized for giving short answers.   Like the plaintiff in <u>Gibo</u>, Plaintiff has not established that Defendant's reliance on the decision of the interview panel was discriminatory.

       Both of the applicants here were subject to the same application and interview process, including the completion of an assignment.   Both had the opportunity to discuss the position with team leaders in advance of the interview, and were interviewed by the same group of panelists.   Plaintiff does not rebut Defendant's evidence that Ms. Limberis submitted a thorough assignment, performed well during her interview, and had experience and skills that would be useful in the new position, including her background in training other employees.   Although Plaintiff maintains the interview process must have been subjective and unfair because he believes he was the more qualified candidate, an "employee's subjective personal judgments of [his or] her competence alone do not raise a genuine issue of material fact."   <u>Bradley v. Harcourt, Brace and Co.</u>, 104 F.3d

267, 270 (9th Cir. 1996).  Plaintiff has presented no evidence
with respect to the interview process, other than his speculation
and assessment of his own qualifications, that Defendant's
decision to and hire Ms. Limberis had anything to do with
Plaintiff's sex or age.

>    **2.   Panel Composition**

Plaintiff argues that the make up of the interview
panel and Ms. Liberis' friendship with two of its members is
evidence of discrimination.  Defendant argues that panel
composition is not evidence of discriminatory animus because it
included members of the same age and sex as Plaintiff, three
panelists volunteered to participate in the panel, and
Ms. Kennedy sat on another panel that selected a 65 year old male
for the ICS position at a Santa Barbara Whole Foods store.  [Mem.
in Supp. at 14.]  The Court notes that Plaintiff provides no
evidence of discriminatory animus on the part of any of the
individual interviewers.  See Turner v. Pub. Serv. Co. of Colo.,
563 F.3d 1136, 1146 (10th Cir. 2009) ("Nor does the fact that
Turner's interview panel consisted of four men raise any
concerns.  Turner proffered no evidence that any of the
interviewers held discriminatory attitudes or participated in
past discrimination.").  Plaintiff also fails to explain exactly
how the interview panel's composition disadvantaged men, or older
employees.

Plaintiff relies on evidence that the lone male on the panel originally selected Plaintiff for the position, but changed his vote following the panel's discussion.  The notes that Mr. Tomaszewski provided to Ms. Benson indicate that he "re-evaluated his first vote and given the fact that I liked both candidates and thought either one could do the job and also given the fact that the ICS position seemed to tilt more towards training. . . ." [Defendant's CSOF, Benson Decl., Exh. 14 (9/21/10 Signed Statement), at 11013300008.]  At best, this unsworn statement indicates that the lone male on the panel changed his mind after further discussion, but does not indicate any discriminatory animus on the part of the other panel members or management's composition of the panel.

With respect to the alleged friendship between Ms. Liberis, Ms. Kennedy, and Ms. Georgedes, the Court notes that there is no allegation that Ms. Kennedy or Ms. Georgedes favored Ms. Liberis for the position because of her age or sex.  Several courts have held that "[a]s a matter of law, favoring an employee because of friendship is not favoring the employee because of [protected class]." Bell v. Crowne Mgmt., LLC, 844 F. Supp. 2d 1222, 1237 n.27 (S.D. Ala. 2012) (citing Greene v. Potter, 557 F.3d 765, 771 (7th Cir. 2009); Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1170–71 (10th Cir. 2007)). See also Caldwell v. State of Washington, 278 Fed. Appx. 773, 776, 2008 WL 2080683,

at *1 (9th Cir. 2008) ("Even accepting all of [plaintiff's] allegations and reasonable inferences therefrom as true, the evidence suggests only that the stated reasons for failing to promote [plaintiff] were a pretext for offering the position to a personal friend of [plaintiff's supervisor], not that they were a pretext for racial discrimination."); <u>Dove v. Bayer Healthcare LLC</u>, No. C 05-02873 JSW, 2006 WL 1663845, at *6 (N.D. Cal. June 15, 2006) (Holding that a co-worker's "promotion demonstrates at best, that an under-qualified individual was promoted to another position within the same department based on his friendship with a supervisor. This does not constitute evidence demonstrating that other, similarly situated employees outside of Plaintiff's protected class were treated more favorably.").

Plaintiff also urges the Court to deny summary judgment based on his allegation that Ms. Kennedy coached Ms. Liberis, which enable her to outperform him at the interview. Plaintiff acknowledged at his deposition that he did not have any basis for saying that Ms. Kennedy coached Ms. Limberis other than his view that they had a personal friendship and his view that he was more qualified. [Defendant's CSOF, Exh. 1 (7/20/12 Dep. Tr.) at 102.] Even assuming Ms. Kennedy did assist Ms. Limberis in preparing for the interview, Defendants presented evidence that all candidates were encouraged to, and in fact did, consult with

members of the interview panel in order to prepare.  To the extent the alleged coaching was a result of a personal friendship, without any other indicia of discriminatory animus, Plaintiff has not shown a genuine issue of material fact with respect to his coaching allegations and age or sex-based discrimination for the same reasons as discussed above.

Plaintiff's assertions fall short of the "specific" and "substantial" type of circumstantial evidence that Plaintiff is required to demonstrate to create a triable issue as to whether Defendant intended to discriminate on the basis of her sex or age.  In sum, the Court concludes that Plaintiff has not established that Defendant's legitimate business reasons for selecting the younger, female candidate were pretextual, and Defendant is entitled to summary judgment on Plaintiff's age and sex discrimination claims.

## II.  Count III - IIED

"The elements of the tort of intentional infliction of emotional distress are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." Hac v. Univ. of Haw., 102 Hawai'i 92, 106-07, 73 P.3d 46, 60-61 (2003) (adopting IIED standard from Restatement (Second) of Torts).

Plaintiff asserts that "Defendant wrongly failed to select Plaintiff for the ICS position based on discriminatory conduct.  As such it is guilty of outrageous conduct."  [Mem. in Opp. at 11.]  The Court disagrees.

> In explaining the type of "outrageous" conduct that makes a claim for intentional infliction of emotional distress actionable, the Restatement (Second) of Torts states:
>
>> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Ross v. Stouffer Hotel Co. (Hawai'i) Ltd., Inc., 76 Hawai'i 454, 465 n.12, 879 P.2d 1037, 1048 n.12 (1994) (quoting Restatement (Second) of Torts § 46, cmt. d. (1965)).  "The question whether the actions of the alleged tortfeasor are . . . outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury."  Nagata v. Quest Diagnostics Inc., 303 F. Supp. 2d 1121, 1127 (D. Hawai'i 2004) (citing Shoppe v. Gucci Am., Inc., 94

22

Hawai'i 368, 387, 14 P.3d 1049, 1068 (2000)).

> Hawaii's definition of outrageous conduct
> creates a very high standard of conduct in the
> employment context.  See Ross v. Stouffer Hotel
> Co., 76 Hawai'i 454, 879 P.2d 1037, 1048 (Haw.
> 1994) (granting summary judgment for employer on
> employee's IIED claim); Ingle v. Liberty House,
> Inc., Civil No. 94-0787(3), 1995 WL 757746, at *4
> (Haw. Cir. Ct. Oct. 12, 1995) (noting, "In Ross,
> the Hawaii Supreme Court recently has set an
> extremely high, standard for such a claim in the
> employment context[.]").  Under Hawai'i law,
> termination alone is not sufficient to support an
> IIED claim; rather, what is necessary is a showing
> of something outrageous about the manner or
> process by which the termination was accomplished.
> As stated in Ingle, "[a]lthough intentional
> infliction claims frequently are asserted in
> connection with employee dismissals, recovery is
> rare.  Imposition of liability on this tort theory
> is likely only in the unusual case when an
> employer deliberately taunts an employee, or when
> an employer handles an employee with outrageous
> insensitivity."  Ingle, 1995 WL 757746, at *4
> (quotation omitted; emphasis added); see also
> Courtney v. Canyon Television & Appliance Rental,
> Inc., 899 F.2d 845, 852 (9th Cir. 1990)
> ("[d]ischarge, without evidence of more, does not
> create a case for emotional distress.").

Ho-Ching v. City & Cnty. of Honolulu, CV. No. 07-00237 DAE-KSC,

2009 WL 1227871, at *12 (D. Hawai'i Apr. 29, 2009).

Even when viewed in the light most favorable to

Plaintiff, the evidence does not demonstrate conduct that was

outrageous, or beyond all bounds of decency.  Cf. Weaver v.

A-American Storage Mgmt. Co., Civil No. 10-00600 JMS-KSC, 2011 WL

97651, at *8 (D. Hawai'i Jan. 12, 2011) ("Intentionally

discriminating against an employee based on race, terminating him

after only a few weeks in violation of federal and state law,

evicting him, taking his residence and car, forcing him to remove his belongings to the street, *and* later giving false information to prospective employers could constitute 'outrageous' conduct for purposes of IIED.").

Defendant is entitled to summary judgment on Plaintiff's IIED claim.  Because there are no remaining claims, the Court does not reach the issue of punitive damages.

## CONCLUSION

On the basis of the foregoing, Defendant Mrs. Gooch's Natural Food Market, Inc.'s Motion for Summary Judgment, filed September 7, 2012, is HEREBY GRANTED.  The Clerk's Office is directed to close this case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 22, 2013.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge


**VINCENT L. HOLLISTER V. MRS. GOOCH'S NATURAL FOOD MARKETS, INC., ET AL; CIVIL NO. 12-00176 LEK-KSC; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**